

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOSEPH JOHNSON, ET AL.                    CIVIL ACTION

VERSUS                                     NO: 99-1374

TUFF-N-RUMBLE MANAGEMENT,                  SECTION: "R"(3)
INC., ET AL.


### ORDER AND REASONS

Before the Court are several motions brought by plaintiffs, Joseph Johnson and Wardell Quezergue, and defendant, Tuff-n-Rumble Management, Inc. d/b/a Tuff City Records, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions all seek to determine whether Tuff City owns a copyright interest in the song *It Ain't My Fault*, authored by plaintiffs in 1964. Plaintiffs move for partial summary judgment and to dismiss Tuff City's claim of copyright ownership through its alleged partial ownership of Bonatemp Music Publishing Co., Inc. Plaintiff Joseph Johnson moves individually for partial summary judgment, seeking a declaration that Tuff City does not own a copyright

DATE OF ENTRY

AUG 1 4 2000



interest in his share of the song.  Tuff City moves for partial
summary judgment against each plaintiff, seeking to dismiss
plaintiffs' claims of copyright infringement against it.  Tuff
City also moves to strike portions of plaintiffs' oppositions to
summary judgment.  Plaintiffs and Tuff City seek awards of costs
and attorney's fees pursuant to 17 U.S.C. § 505.

Also before the Court is the motion of third-party
defendant, Ulis Gaines Sr., to dismiss the claims of Tuff City
against him pursuant to Rule 12(b)(6) and, alternatively, Rule
56.  The Court rules on these motions as follows.

## I.   BACKGROUND

This copyright infringement case involves the rights to a
song entitled *It Ain't My Fault*.  Plaintiffs, Joseph Johnson and
Wardell Quezergue, claim that Tuff-n-Rumble Management, Inc.
d/b/a Tuff City Records, Joe Jones d/b/a Melder Publishing Co.,
Boutit, Inc. d/b/a No Limit Records, No Limit of New Orleans,
L.L.C., Vyshonn Miller a/k/a Silkk the Shocker, and Big P Music,
L.L.C. infringed their rights to *It Ain't My Fault*.  Tuff City
asserts cross-claims of copyright infringement against Jones, No
Limit Records, No Limit of New Orleans, Big P Music, and Shocker.
Tuff City also maintains a third-party complaint against Ulis
Gaines, Sr., the alleged president of Bonatemp Music Publishing

2

Co., Inc. and NOLA Records, Inc., for indemnification, copyright infringement, and an accounting. (*See* Third Party Compl. ¶¶ 16, 20-29.)

Plaintiffs allege that Tuff City infringed their copyright by wrongfully claiming ownership of the song, by failing to acquire a mechanical reproduction license, and by collecting thousands of dollars of royalties, all in violation of 17 U.S.C. §§ 106, 115 and 410(c). Specifically, plaintiffs allege that Tuff City committed these violations when it released the song on the compact disc *New Orleans Deep Roots*. As a result, plaintiffs seek a declaration that they are the sole copyright owners of the song. Plaintiffs also seek profits, damages, costs and reasonable attorney's fees.

Tuff City is a New York music company that invests in "forgotten songs" and promotes their use in movies, third-party compilations, derivative works, and digital samples. (*See* Tuff City's Mot. Summ. J. Johnson Gandel Decl. ¶¶ 2-3.) It concedes that plaintiffs composed *It Ain't My Fault* in 1964. Quezergue registered plaintiffs' copyright in *It Ain't My Fault* with the United States Copyright Office on June 22, 1964.

Tuff City defends plaintiffs' copyright infringement claims, however, by arguing that plaintiffs transferred a partial ownership interest in the song's copyright to it. This

3

assignment allegedly occurred in either of two ways.  First, Tuff City claims that Johnson and Quezergue each assigned it 50% of their respective interests in the song's copyright by written contracts.  Second, Tuff City claims to have received partial copyright ownership of the song through its ownership of Bonatemp Publishing Co.  The Court will address the facts underlying each of these allegations in turn.

### A.  Contracts with Johnson and Quezergue

Tuff City first claims that Johnson and Quezergue transferred 50% of their respective interests in the song to it by means of contracts dated June 17, 1997 and February 12, 1998, respectively.  By affidavit, Tuff City's President Aaron Fuchs states that while he was in New Orleans during the city's annual Jazz & Heritage Festival in May 1997, he approached Johnson about entering into a contract whereby Tuff City would purchase the songs that Johnson had written.  (*See* Def.'s Mot. Summ. J. Johnson, Fuchs Decl. ¶¶ 1-5.)  Fuchs asserts that he called Johnson several weeks later to confirm Tuff City's interest in purchasing Johnson's copyrights, and the two agreed to the contract terms during that call.  (*See id.* ¶¶ 8-9.)  Tuff City then sent Johnson a contract for the assignment of 50% of his copyrights and a first check for $100. (*See id.* ¶ 11.)  When Fuchs called Johnson on or about June 20, 1997, Johnson indicated

he had received the contract and would sign it.  (*See id.* ¶ 12)
Both Johnson and Tuff City have submitted copies of this
contract, which are identical, except that the one submitted by
Tuff City was signed by its representative.  Johnson signed
neither copy of the contract.

The contract between Tuff City and Johnson is dated June 17,
1997.  It provides for Johnson to assign 50% of all of his
copyrights, expressly including his copyright in *It Ain't My
Fault*, to Tuff City, in return for Tuff City's obligation to
administer the copyrights and to pay Johnson (1) an advance of
$100; (2) payments of $100 per year for the next five years; and
(3) Johnson's share of the income collected from the use of the
copyrights.  (*See* Tuff City Mot. Summ. J. Johnson Ex. B.)  The
contract also states that "deposit of the check (#5441) will
constitute an agreement."  (*Id.*)

Check number 5441, which Tuff City issued to Johnson, is
also dated June 17, 1997.  (*See id.* Ex. C.)  Its legend contains
the following notation:  "FOR assignment of Johnson's copyrights
to Tuff City agreement dated June 17, 1997."  (*Id.*)  Johnson
acknowledges endorsing the check.  His church deposited the check
against Tuff City's account on June 23, 1997.  (*See id.* Ex. A
Johnson Dep., at 134; Ex. C.)

In his deposition, Johnson stated that when he received the

check and the contract, the contract was signed.  (*See id*. Ex. A
Johnson Dep., at 134.)   The affidavit he submitted in support of
his opposition to summary judgment on July 25, 2000 notably
contradicts this deposition testimony, stating that "he received
two original unsigned contracts from Aaron Fuchs." (*See* Pl.'s
Mot. Opp'n Summ. J. Ex. B, Johnson Aff.)   Johnson said that he
believed the contract was for the use of his name and likeness on
an album to be released by Tuff City.  (*See id*. Tuff City Mot.
Summ. J. Johnson Ex. Q, Johnson Ans. Tuff City's Interrog. No.
10.).  He testified that he did not sign the contract but put it
away in a drawer.  (*See id*. Ex. A Johnson Dep., at 134.)   Johnson
stated that he told Fuchs by phone approximately one week after
receiving the contract that he had not signed it.  (*See id*.)
Johnson also stated, however, that he never spoke to Fuchs about
the contract after that and never considered sending the $100
check back.  (*See id*. at 144.)   Tuff City first became aware that
Johnson contested the June 1997 contract during the late summer
or early fall of 1998.  (*See id*. Gandel Decl. ¶ 15.)

Quezergue and Tuff City entered into an agreement similar to
the one Tuff City proffered to Johnson on February 12, 1998.   The
agreement is signed by Aaron Fuchs on behalf of Tuff City and by
Quezergue.  Under the agreement, Quezergue agreed to assign to
Tuff City 50% of the copyrights in all of the compositions that

he wrote between 1952 and 1995.  (*See* Tuff City's Mot. Summ. J. Quezergue Ex. A.)  The agreement expressly includes the copyrights to songs listed in an attached schedule, which in turn lists *It Ain't My Fault*.  (*See id.*)  Quezergue initialed each page of the two-page agreement, as well as each page of the attached schedule of compositions.  (*See id.*)

In return for the assignment, Tuff City agreed to pay Quezergue $2,000, as well as his share of the income generated by the copyrights.  (*See id.*)  Quezergue endorsed and deposited a $2,000 check from Tuff City on February 25, 1998.  On February 2, 1999, Tuff City recorded the assignment from Quezergue of *It Ain't My Fault* with the U.S. Copyright Office.  (*See id.* Ex. D.)

### B.    Tuff City's Partial Ownership of Bonatemp

Tuff City also claims ownership of a copyright interest in *It Ain't My Fault* through its alleged partial ownership of Bonatemp Music Publishing Co.  Alternatively, Tuff City asserts that it is the beneficiary of a non-exclusive license to the song that plaintiffs granted to Bonatemp.

In March 1998, Tuff City entered into agreements with Quezergue, Eugene Burley, and Clint Scott.  (*See* Opp'n Pls.' Mot. Summ. J. Exs. H, I, J.)  Pursuant to the agreements, which were signed by all parties, Quezergue, Burley, and Scott represented that they each owned 20% of the copyrights in compositions

recorded for Bonatemp.  (*See id.*)  They agreed to assign to Tuff City all of their ownership in the copyrights owned by Bonatemp, including those listed in the attached schedule "A."  (*See id.*) The schedule is initialed by Quezergue and indicates that Bonatemp owns a 50% interest in *It Ain't My Fault*. (*See id.* Ex. H-1.)  Quezergue, Scott and Burley also agreed to transfer their ownership interests in Bonatemp.  (*See id.* Exs. H, I, J.)

Although Tuff City proffers evidence that it has an ownership interest in Bonatemp, it does not dispute that it has not produced a written assignment of the copyright in *It Ain't My Fault* from either Johnson or Quezergue to Bonatemp.  Plaintiffs attest that they never made such an assignment to Bonatemp.  (*See* Pls.' Mot. Partial Summ. J. Ex. C, Johnson Aff.; Ex. D, Quezergue Aff.)  Further, Tuff City agrees that Bonatemp has failed to file a copyright registration or assignment in the song.  Its claim is thus that, to the extent Bonatemp owned the song or a portion thereof, Tuff City owned a 60% interest in Bonatemp's share of the song by virtue of its ownership of the company.

Plaintiffs now move for partial summary judgment on the grounds that no genuine issue of fact exists as to whether Tuff City owns a copyright interest in *It Ain't My Fault*. Specifically, plaintiffs argue that Tuff City has failed to

8

produce a valid written assignment as required to establish its ownership under federal copyright law.  Tuff City also seeks summary judgment, asserting that plaintiffs' claims of copyright infringement against it must be dismissed because valid written assignments do exist, and Tuff City is thus a joint owner of the song, which cannot be sued for infringement.  Alternatively, Tuff City argues that a genuine issue of fact exists for trial.


## II.  DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).  The moving party bears the burden of

establishing that there are no genuine issues of material fact.

If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325, 106 S. Ct. at 2554; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.   The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325, 106 S. Ct. at 2553-54; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

This case is set for a bench trial on September 11, 2000. The Fifth Circuit has "arguably articulated an even more lenient standard for summary judgment in certain nonjury cases." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n. 15 (5th Cir. 1987).   In *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123 (5th Cir. 1978), the Fifth Circuit explained:

> There is no litmus test that infallibly distinguishes those issues that are "factual" from those that are "legal" or "mixed." . . . as we approach the point

10

> where facts and the application of legal rule to them
> blend, appraising evidentiary facts in terms of their
> legal consequences and "applying" law to fact become
> inseparable processes.

Therefore, in a nonjury case the court is encouraged to draw
inferences, even when they appear to be factual, if a "trial on
the merits would reveal no additional data." *Id*. at 1124.

### B.   Requisites for a Valid Copyright Assignment

To prevail on a copyright infringement claim, plaintiffs
must prove that they own a valid copyright and that defendants
impermissibly copied or otherwise infringed upon that copyright.
*See Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 500 (5th
Cir. 1998) (*citing DSC Communications Corp. v. DGI Techs., Inc.*,
81 F.3d 597, 600 (5th Cir. 1996)).  Under the Copyright Act,
ownership of a copyright in a work "vests initially in the author
or authors of the work."  17 U.S.C. § 201(a); *Lulirama Ltd., Inc.
v. Axcess Broadcast Serv., Inc.*, 128 F.3d 872, 876 (5th Cir.
1997).  Here, it is undisputed that Johnson and Quezergue
authored *It Ain't My Fault*.  Accordingly, ownership of the
copyright vested initially with plaintiffs.  The issue is whether
plaintiffs transferred their interest in the copyright to Tuff
City.

A copyright owner may transfer his ownership in whole or in
part.  *See* 17 U.S.C. § 201(d).  However, "[a] transfer of

11

copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is <u>in writing</u> and <u>signed by the owner of the rights conveyed</u> or such owner's duly authorized agent." *Id.* § 204(a) (emphasis added). The writing requirement "ensures that the creator of a work will not give away his copyright inadvertently." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 556-57 (9th Cir. 1990). A written agreement assigning interests in a copyright must clearly establish that the parties intended to transfer a copyright interest. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992).

### 1. Written Assignment by Johnson

Tuff City asserts that the contract and check dated June 17, 1997 constitute an instrument of conveyance, which is signed by the owner of the copyright, and thus satisfies the writing requirement for an assignment of copyright under the Copyright Act. The Court agrees.

The writing requirement in section 204 is not intended to be unduly burdensome. *See Effects Assocs.*, 908 F.2d at 557; 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A][2] (2000). As one court has noted, a written assignment of copyright interests "doesn't have to be the Magna Charta [sic]; a one-line pro forma statement will do." *Effects Assocs.*, 908 F.2d

12

at 557.  Another court, agreeing that a simple one-line statement
is sufficient for purposes of section 204(a), has emphasized that
the terms of any writing must be clear.  *See Papa's-June Music,
Inc. v. McLean*, 921 F. Supp. 1154, 1159-60 (S.D.N.Y. 1996).

In *Dean v. Barrows*, the court held that an endorsed check
complied with the requirements of section 204(a) and served to
transfer copyright ownership.  732 F. Supp. 816, 823 (E.D. Tenn.
1989).  The copyright holder endorsed and deposited the check at
the time the parties agreed to a transfer of the copyrights.  *See
id.* at 818.  The check contained a notation that it was for "mold
designs and molds," the subject of the transfer.  Further, an
unsigned agreement written in the copyright owner's handwriting
evidenced the transfer.  *See id.*

The Second Circuit has also suggested that the use of a
legend on a check may satisfy the section 204(a)'s writing
requirement in certain circumstances.  *See Playboy Enters., Inc.
v. Dumas*, 53 F.3d 549 (2d Cir. 1995).  *See also National Ass'n of
Freelance Photographers v. Associated Press*, 1997 WL 759456, at
*5 (S.D.N.Y. Dec. 10, 1997) (use of legend on check and
endorsement thereof "may be effective to transfer copyright under
the proper circumstances.").  In contrast to *Dean*, however,
*Playboy Enterprises* affirmed the district court's finding that
the legend on the back of checks was insufficient, by itself, to

13

transfer copyright ownership. *See id.* at 564. The legend there did not expressly mention copyrights. *See id.* Moreover, the evidence conflicted as to whether the parties intended a one-time transfer of reproduction rights or a transfer that included the copyright. *See id.* The court thus concluded that the checks did not satisfy section 204(a) due to the ambiguity of the legend and the absence of evidence of the parties' intent. *See id. See also Papa's- June Music*, 921 F. Supp. at 1159-60 (endorsed checks did not transfer copyright ownership when neither checks nor attached royalty statements mentioned transfer of copyright ownership); *Museum Boutique Intercontinental, Ltd. v. Picasso*, 880 F. Supp. 153, 162 & 162 n.11 (S.D.N.Y. 1995) (checks without explanatory notations, other than "Picasso royalties," insufficient to prove agreement to satisfy Copyright Act's statute of frauds).

Here, the check and the contract are both dated June 17, 1997. Tuff City issued the check, and Aaron Fuchs signed it. On its face, the check states that it is for "assignment of Johnson's copyrights to Tuff City agreement dated June 17, 1997." Unlike *Dumas* and *Papa's-June Music*, the language on the check expressly refers to an assignment of copyrights. The check clearly indicates that an ownership interest in copyrights is being transferred from Johnson to Tuff City. Johnson, who was

14

the "the owner of the rights conveyed," endorsed the check, and
his church deposited it against Tuff City's account on June 23,
1997, one week after it was issued.

The Court notes that the check does not expressly refer to
the song *It Ain't My Fault* or the extent of the ownership
interest conveyed.  To the extent that the notation is deemed
ambiguous as to the copyrights transferred, the Court may
consider extrinsic or parol evidence.  *See Real Estate Data, Inc.
v. Sidwell Co.*, 809 F.2d 366, 376 (7th Cir. 1987) (parol evidence
may be admitted to establish parties' intent with respect to
copyright ownership) (*citing May v. Morganelli-Heumann & Assocs.*,
618 F.2d 1363, 1369 (9th Cir. 1980); *Shugrue v. Continental
Airlines, Inc.*, 977 F. Supp. 280, 286 (S.D.N.Y. 1997) (extrinsic
evidence may be considered for purposes of 204(a) if agreement is
ambiguous).  The circumstances surrounding the issuance of the
check clarify that Johnson intended to transfer 50% of his
copyright interest in *It Ain't My Fault* to Tuff City.  As noted,
the check expressly refers to the June 17, 1997 agreement.
Johnson does not dispute that he received that agreement and has
produced a copy of the agreement that is identical to that
produced by Tuff City, except for the absence of a signature by
Tuff City's representative.

Johnson attempts to create an issue of fact by submitting

affidavits in which he denies the existence of an assignment to Tuff City and alleges that the contract he received from Tuff City was unsigned.  (*See* Johnson Mot. Partial Summ. J. Ex. B, Johnson Aff.; Pl.'s Mot. Opp'n Mot. Summ. J. Ex. B, Johnson Aff.) Johnson's denial of the assignment is a conclusory statement that refers to no specific facts or evidence to explain how he understood the documents he admitted receiving, and the check he admitted endorsing, mean anything other than what their plan language reveals.  This general allegation is insufficient to defeat Tuff City's properly supported motion for summary judgment.  *See, e.g., Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) ("Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence") (citation omitted); *Tanner v. Academy Tankers Inc.*, 898 F. Supp. 421, 426 (E.D. Tex. 1995), *aff'd*, 85 F.3d 625 (5th Cir. 1996) ("A nonmovant's conclusory allegations supported by a conclusory affidavit are insufficient to avoid summary judgment.") (*citing Broadway v. Montgomery*, 530 F.2d 657, 660 (5th Cir. 1976)).

    With regard to Johnson's assertion that the contract he received from Tuff City was unsigned, the Court notes that Johnson testified at his deposition on May 2, 2000 that "the contract was signed" when he received it.  It is well established

that a party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax*, Inc., 72 F.3d 489, 495 (5th Cir. 1996).  Accordingly, the Court may disregard Johnson's later affidavit, which contradicts his prior deposition testimony and states that he received two <u>unsigned</u> contracts from Fuchs.  Johnson has provided the Court with no explanation for this inconsistency.  Moreover, section 204(a) does not expressly require that the <u>transferee</u> of the copyright interests sign the instrument of conveyance and, in any event, the check endorsed by Johnson was signed by Fuchs on behalf of Tuff City.  *See* 17 U.S.C. § 204(a) (requiring signature by owner of rights conveyed).  The Court therefore rejects Johnson's argument that there was no offer by Tuff City.

Other evidence in the record supports a finding that Johnson understood that the endorsement of the check transferred his copyright ownership in *It Ain't My Fault*.  The June 17, 1997 agreement, which expressly refers to the check and unambiguously states that Johnson agrees to transfer and assign 50% of all of his copyrights, including his copyright in *It Ain't My Fault*.  The contract, which Johnson admitted receiving, also states that deposit of the check #5441 will constitute an agreement.  Johnson cashed the check one week after receiving it.  He admitted that

17

he never considered returning it, nor did he inform Tuff City that he sought to rescind the assignment until more than one year later.  When the language on the check is considered along with the accompanying circumstances, the Court finds sufficient evidence exists to establish that Johnson intended to transfer 50% of his interest in *It Ain't My Fault* to Tuff City and did so by means of a signed writing in accordance with section 204(a).

By Johnson's assignment, Tuff City received a 25% interest in *It Ain't My Fault*.  Accordingly, Tuff City became a co-owner of the song's copyright.  The law is clear that "[a] co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright."  *Quintanilla*, 139 F.3d at 500 (*quoting Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984)).  This is because federal law treats co-owners as "tenants-in-common," with each owning an undivided interest in the whole copyright and each entitled to exercise all of the exclusive rights of a copyright owner set forth in section 106 of the Copyright Act.  *See* NIMMER ON COPYRIGHT §§ 6.09, 6.10.  Plaintiffs argue that their respective copyright infringement claims against Tuff City should stand, even if one of them validly assigned their interest in the copyright to Tuff City.  They cite no legal authority for that proposition, and the Court finds none.  Indeed, the authority on this issue suggests that if one's co-owner transfers his interest

in a shared copyright, the transferee of the co-owner stands in his shoes and cannot be sued by the other co-owner for copyright infringement.

> In the absence of an agreement to the contrary, one joint owner may always transfer his interest in the joint work to a third party, subject only to the general requirements of a valid transfer of copyright. . . . A transferee of one joint owner stands in the shoes of his transferor so that he may in turn grant nonexclusive licenses in the work.

NIMMER ON COPYRIGHT § 6.11.  Accordingly, the assignment by Johnson to Tuff City of a 25% interest in the copyright in *It Ain't My Fault* requires the dismissal of the claims of both Johnson and Quezergue for copyright infringement against Tuff City.  Even if this result did not follow, however, the Court finds below that Quezergue also assigned 50% of his copyright interest in *It Ain't My Fault* to Tuff City, independently necessitating the dismissal of his claim.

### 2.   Written Assignment by Quezergue

On February 12, 1998, Tuff City and Quezergue entered into an agreement by which Quezergue agreed to assign to Tuff City 50% of the copyrights or works that Quezergue composed between 1952 and 1995.  The agreement expressly includes a list of compositions on an attached schedule, which in turn includes *It Ain't My Fault*.  In return for the assignment, Tuff City agreed to pay Quezergue $2,000 and his share of any money collected on

19

these copyrights.  Quezergue signed the contract and initialed each page as well as the pages of the attached schedule listing *It Ain't My Fault.*

The Court finds that the language of the agreement unambiguously evinces Quezergue's intent to assign 50% of his copyright interest in *It Ain't My Fault* to Tuff City.  Indeed, in his deposition, Quezergue states that he remembered reaching a songwriter's agreement with Tuff City, by which Tuff City received half of his share of the songs that he wrote.  (*See* Tuff City Mot. Summ. J. Quezergue Ex. E, Quezergue Dep., at 80-81.) Although he was initially confused as to whether *It Ain't My Fault* was properly included in this contract, he later clarified that it was.  (*See id.* at 88-89.)  Quezergue endorsed and cashed the $2,000 check from Tuff City dated February 12, 1998.  Based on the foregoing, the Court finds that the contract between Quezergue and Tuff City operated as a valid written instrument of conveyance pursuant to section 204(a) to assign Tuff City 50% of Quezergue's interest in the copyright to *It Ain't My Fault.*

In his opposition, Quezergue presents evidence that the Department of State of New York dissolved Tuff City's certificate of incorporation on September 24, 1997, approximately five months before it entered into the contract with him.  He argues that the contract is therefore invalid because Tuff City lacked capacity

to contract.  The Court rejects this argument.  The New York
Department of State dissolved Tuff City for failure to pay taxes
pursuant to section 203-A of the Tax Law.  (*See* Quezergue Opp'n
Mot. Summ. J. Ex. A.)  Although a corporation may be dissolved by
New York under the Tax Law, it may continue to operate as a *de
facto* corporation, and ordinarily only the State of New York may
question its existence.  *See H.E.G. Development & Mgmt. Corp. v.
Blumberg*, 656 N.Y.S.2d 127, 128 (N.Y. Sup. Ct. 1997) (citations
omitted).  Accordingly, the Court rejects Quezergue's argument
that the contract is invalid because of the action of the New
York Department of State.

Because Quezergue validly assigned 50% of his interest in *It
Ain't My Fault* to Tuff City on February 12, 1998, Tuff City
became a co-owner of the copyright and may not be sued for
copyright infringement, as outlined in detail above.  Quezergue
and Johnson's claims for copyright infringement against Tuff City
must be dismissed.

### 3.   Tuff City's Ownership of Bonatemp

The Court's finding that Tuff City owns an interest in *It
Ain't My Fault* by valid written assignment from Quezergue and
Johnson disposes of plaintiffs' claims for copyright infringement
against Tuff City.  Nevertheless, plaintiffs have raised the
issue of the validity of Tuff City's claim of partial ownership

21

of the copyright in *It Ain't My Fault* through its partial ownership of Bonatemp.  Because this issue is relevant to the resolution of other claims in this lawsuit, the Court will address it on the merits.

Tuff City argues that, <u>to the extent</u> that Bonatemp has an ownership interest in the copyright in *It Ain't My Fault*, Tuff City owns 60% of that interest by virtue of its partial ownership of Bonatemp.  In the first place, Bonatemp is a corporation. Tuff City does not own corporate property but an interest in the company.  The company has a defense to copyright infringement if it owns an interest in the copyright. Shareholders, such as Tuff City, do not.

Secondly, Tuff City concedes that it has no evidence of a written assignment of the song from plaintiffs to Bonatemp. Indeed, plaintiffs aver that they never assigned their portion of the copyright in *It Ain't My Fault* to Bonatemp.  (See Pls.' Mot. Partial Summ. J. Exs. C, D.)  Tuff City asserts that an issue of fact nevertheless exists as to whether plaintiffs assigned their interest in the song to Bonatemp.  In support, they point to record labels indicating that the original release of *It Ain't My Fault* credits Bonatemp with owning the publishing interest in the song, as does a 1994 album which includes a version of the song. (*See* Tuff City Opp'n Pls.' Mot. Partial Summ. J. Exs. L, O.)

22

Tuff City also relies on the schedule attached to the agreements signed by Quezergue, Scott, and Burley, because it lists *It Ain't My Fault* among the songs owned by Bonatemp.  (*See* id. Ex. H-1.) Tuff City asserts that all of this circumstantial evidence demonstrates that Quezergue must have signed a writing assigning his ownership interest in *It Ain't My Fault* to Bonatemp.  The Court finds such evidence insufficient to sustain Tuff City's burden on summary judgment.  By affidavit, plaintiffs have stated that they did not assign their interest to Bonatemp.  Further, although Johnson admitted in his deposition that the original release credited Bonatemp with owning the song, he further stated "I seen that on there but I know it wasn't true."  (*See id.* Ex. B, Johnson Dep., at 121.)

Tuff City also argues that the contract Quezergue signed transferring his ownership of Bonatemp to Tuff City constituted a later signed memoranda sufficient to document the assignment under section 204(a).  It is true that courts have recognized that "a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio." *Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (*citing Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1533 (11th Cir. 1994)).  See

*also Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th
Cir. 1996).  However, courts have applied this logic in limited
circumstances and generally when "there is no dispute between the
copyright owner and the transferee about the status of the
copyright," and the owner and transferee have joined together
against an alleged infringer.  *Id.  Eden Toys, Inc. v. Florelee
Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982) ("In this case,
in which the copyright holder appears to have no dispute with its
licensee on this matter, it would be anomalous to permit a third
party infringer to invoke [section 204(a)] against the
licensee."); *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp.
315, 318 (S.D.N.Y. 1996) (finding later execution of writing
confirmed oral agreement when there was no dispute about whether
owner or assignee could bring claim against infringer).  The
Eleventh Circuit's permissive approach to the section 204(a)
requirements is not applicable here because a dispute exists
between the copyright owner and the alleged transferee about who
owns the copyright.  There is no convincing evidence that
Quezergue and Bonatemp reached an oral agreement to assign the
copyright.  Moreover, the contract between Quezergue and Tuff
City dated February 12, 1998 does not satisfy section 204(a)
because it does not assign Quezergue's interest in *It Ain't My
Fault* to Bonatemp, but assigns Bonatemp's interest, if any, in

24

the song to Tuff City.

This case is set for trial in one month, and Tuff City has presented no evidence of the existence of any "instrument of conveyance, or a note or memorandum of the transfer, [] in writing and signed by the owner of the rights conveyed" between Johnson and/or Quezergue and Bonatemp.  The Court rejects Tuff City's request that it stay this motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure pending the completion of discovery.  This motion was noticed for hearing on July 5, 2000, and the deadline for discovery was July 31, 2000.  Tuff City has not supplemented the record with any additional evidence demonstrating the existence of a valid written assignment to Bonatemp, a matter on which it bears the burden of proof at trial.  Based on the foregoing, the Court finds that no genuine issue of fact exists as to whether Tuff City obtained an ownership interest in *It Ain't My Fault* through its partial ownership of Bonatemp.

Alternatively, Tuff City argues that its ownership interest in Bonatemp made it a beneficiary of a license that plaintiffs impliedly granted to Bonatemp in *It Ain't My Fault* and therefore entitles it to sue others for copyright infringement.  This argument is specious for a number of reasons.  Suffice it to say, however, if plaintiffs granted an exclusive license to

Bonatemp, which there is no evidence that they did, the license belongs to Bonatemp, not to Tuff City.  A license to Bonatemp would not transform its shareholder into a licensee. Accordingly, Tuff City's claim is rejected.

For all of the foregoing reasons, the Court finds as a matter of law that Tuff City does not have an ownership interest in *It Ain't My Fault* by virtue of its partial ownership of Bonatemp.

### C.   Motion to Dismiss Third-Party Complaint Against Ulis Gaines, Sr.

Third-party defendant Ulis Gaines, Sr. moves the Court to dismiss Tuff City's third-party complaint against him.  The third-party complaint contains a claim for indemnification and a second claim for copyright infringement and an accounting.  The indemnification claim is derivative of plaintiffs' copyright infringement claim against Tuff City, asserting that if the Court determines that Tuff City infringed the copyright as alleged by plaintiffs, then Gaines is liable to Tuff City.  (*See* Third-Party Compl. ¶¶20-23.)  The Court has determined that summary judgment must be granted in Tuff City's favor, dismissing plaintiffs' claims of copyright infringement against it.  Accordingly, the indemnification claim against Gaines must also be dismissed.

The Court next addresses the status of Tuff City's claims

against Gaines for copyright infringement and an accounting.
Gaines argues that Tuff City's claims are barred by the *res
judicata* effect of a state court judgment issued in Civil
District Court for the Parish of Orleans on January 12, 1999.
However, the proceeding in which the judgment issued was a
petition to initiate discovery in advance of litigation, not a
lawsuit on the merits of a cause of action. *See* LA. CIV. CODE
art. 1429. The state court judgment granted Gaines' peremptory
exception of no right of action, based on the absence of evidence
demonstrating that Tuff City had an interest in Bonatemp or a
relationship with Gaines. (*See* Gaines' Mot. Dismiss Ex. A.) A
thorough review of Louisiana law reveals no support for a finding
that the dismissal of a petition to initiate discovery has *res
judicata* effects. *See, e.g.*, LA. REV. STAT. ANN. § 13:4231.
Accordingly, the Court rejects Gaines' defense of *res judicata*.

The Court nevertheless finds that Tuff City's claims of
copyright infringement and an accounting against Gaines must be
dismissed. Tuff City's claim for copyright infringement and an
accounting against Gaines is premised solely on its alleged
copyright ownership interest in *It Ain't My Fault* by virtue of
its 60% ownership of Bonatemp, a company in which Gaines
apparently owns 40%. In the third-party complaint, Tuff City
does not allege a copyright infringement claim against Gaines

27

arising out of Tuff City's ownership interest in the song by direct assignment from plaintiffs.  As a shareholder, Tuff City has no standing to assert Bonatemp's copyright infringement claim, even if it had one.  Further, the Court's finding that Tuff City does not own an interest in the copyright to *It Ain't My Fault* based on its partial ownership of Bonatemp also requires Tuff City's claims for copyright infringement and an accounting to be dismissed.

### D.   Attorneys' Fees

Tuff City asserts that it is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.  Pursuant to section 505, the district court "in its discretion may allow the recovery of full costs by or against any party. . . .  The court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  Tuff City cites *McGaughey v. Twentieth Centruy Fox Television*, 12 F.3d 62, 65 (5th Cir. 1994) and *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985), for the proposition that "[a]lthough attorney's fees are awarded in the trial court's discretion [in copyright cases], they are the rule rather than the exception and should be awarded routinely."  *McGaughey*, 12 F.3d at 65.  These opinions were rendered by the Fifth Circuit prior to the Supreme Court's pronouncement on the issue of attorney's fees awards in copyright actions in *Fogerty*

28

*v. Fantasy, Inc.*, 510 U.S. 517, 114 S. Ct. 1023 (1994).  In
*Fogerty*, the Court rejected an argument that courts in copyright
cases should employ the so-called "British Rule" and
automatically award attorney's fees to prevailing parties.  *See
id.* at 534, 114 S.Ct. at 1033.  The Court clarified that an award
of attorney's fees under section 505 is discretionary.  *See id.*;
*Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409,
1429 (S.D. Tex. 1995).  The Court recognized a list of
nonexclusive factors that district courts may consider in
exercising their discretion, such as "frivolousness, motivation,
objective unreasonableness (both in the factual and legal
components of the case) and the need in some cases to advance
considerations of compensation and deterrence."  *Id.* at 534 n.
19, 114 S.Ct. at 1033 n. 19 (*citing Lieb v. Topstone Indus., Inc.*
788 F.2d 151, 156 (3d Cir. 1986)).

After considering the factors outlined in *Fogerty*, the Court
declines to exercise its discretion to award attorney's fees to
Tuff City.  Plaintiffs' claims were colorable and its position
not objectively unreasonable.  Further, the Court does not find
that an award of fees would promote the equities underlying the
Copyright Act by deterring baseless suits.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Tuff City's motions for summary judgment against Quezergue and Johnson, DENIES Johnson's motion for partial summary judgment, and dismisses plaintiffs' claims of copyright infringement against Tuff City.  The Court GRANTS plaintiffs' motion for partial summary judgment, and Gaines' motion to dismiss and for summary judgment.  The Court DISMISSES AS MOOT Tuff City's motions to strike portions of the oppositions to summary judgment filed by plaintiffs.


New Orleans, Louisiana, this 14th day of August, 2000.



_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

30