

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 DEC 11 AM 11: 45

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH JOHNSON, ET AL.                    CIVIL ACTION

VERSUS                                    NO: 99-1374

TUFF-N-RUMBLE MANAGEMENT,
INC. d/b/a TUFF CITY RECORDS,
ET AL.                                    SECTION: "R" (3)

## ORDER AND REASONS

Before the Court is plaintiffs and defendant Tuff City's motions for summary judgment against defendant Joe Jones. For the reasons set forth below, the Court grants the motion.

**I.    BACKGROUND**

This copyright infringement case involves the rights to a song entitled *It Ain't My Fault* ("the song"). Plaintiffs, Joseph Johnson and Wardell Quezergue, claimed that Tuff-n-Rumble Management, Inc. d/b/a Tuff City Records, Joe Jones d/b/a Melder Publishing Co., Boutit, Inc. d/b/a No Limit Records, No Limit of New Orleans, L.L.C., Vyshonn Miller a/k/a Silkk the Shocker, and

DATE OF ENTRY
DEC 1 1 2000

Fee_____
Process_____
X  Dktd_____
__ CtRmDep_____
__ Doc.No._____

Big P Music, L.L.C. infringed their rights to *It Ain't My Fault*.[1]

On August 14, 2000, the Court granted summary judgment in favor of Tuff City finding no infringement because each of the plaintiffs validly assigned Tuff City one-half of his respective interest in the song's copyright.  A subsequent settlement disposed of the claims against the No Limit defendants.

The only remaining claims in this case are copyright infringement claims by plaintiffs and Tuff City, as co-owners in the copyright, against defendant Joe Jones.  Plaintiffs attest that they never assigned any of their interest in the copyright of the song to Jones, Melder Publishing, or any other entity, firm or corporation owned by Jones.  (*See* Pls.' First Mot. Summ. J. Exs. B & C.)  Jones, appearing herein *pro se*, claims a fifty percent ownership of the song by transfer from Johnson.  In May of 2000, plaintiffs moved for summary judgment against Jones on the grounds that no genuine issue of fact existed as to whether Jones owned a copyright interest in *It Ain't My Fault*.  The Court determined that Jones did not have any ownership interest in the copyright to the song.  Despite this ruling, Jones continues to contend that he owns the song.  Jones continues to rely upon a

---

[1]For simplicity, the Court will refer to Boutit, Inc. d/b/a No Limit Records, No Limit of New Orleans, L.L.C., Vyshonn Miller a/k/a Silkk the Shocker, and Big P Music, L.L.C. as the "No Limit defendants."

1964 contract between himself and Johnson and a 1992 power of attorney between himself and Johnson as proof of ownership.  The Court has already determined that the 1964 contract was forged and that nothing in the 1992 power of attorney, even if valid, indicates that Johnson intended to assign his interest in the song to Jones.  *See Johnson, et al. v. Tuff-N-Rumble Mgmnt., Inc., et al.*, 2000 WL 622612 at *3-*5 (May 15, 2000).  Thus, the Court concluded as a matter of law that Jones does not own a copyright interest in any version of the song and will not address this issue again.  The only remaining issue is whether Jones infringed upon plaintiffs and Tuff City's copyright.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by*

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325, 106 S. Ct. at 2554; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325, 106 S. Ct. at 2553-54; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

This case is set for a bench trial.  The Fifth Circuit has "arguably articulated an even more lenient standard for summary judgment in certain nonjury cases." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n.15 (5th Cir. 1987).  In *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123 (5th Cir. 1978), the Fifth

4

Circuit explained:

> There is no litmus test that infallibly distinguishes
> those issues that are "factual" from those that are
> "legal" or "mixed." . . . as we approach the point
> where facts and the application of legal rule to them
> blend, appraising evidentiary facts in terms of their
> legal consequences and "applying" law to fact become
> inseparable processes.

Therefore, in a nonjury case the court is encouraged to draw

inferences, even when they appear to be factual, if a "trial on

the merits would reveal no additional data." *Id.* at 1124.

## B.   Requisites for a Copyright Infringement Claim

To prevail on a copyright infringement claim, plaintiffs

must prove that they own a valid copyright and that defendants

impermissibly copied or otherwise infringed upon that copyright.

*See Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 500 (5th

Cir. 1998) (*citing DSC Communications Corp. v. DGI Techs., Inc.*,

81 F.3d 597, 600 (5th Cir. 1996)).  Under the Copyright Act,

ownership of a copyright in a work "vests initially in the author

or authors of the work."  17 U.S.C. § 201(a); *Lulirama Ltd., Inc.*

*v. Axcess Broadcast Serv., Inc.*, 128 F.3d 872, 876 (5th Cir.

1997).  Copyright infringement is shown by proof of "ownership"

of copyrighted material by plaintiff and proof of "copying" by

the defendant.  *See Miller v. Universal City Studios, Inc.*, 650

F.2d 1365, 1375 (5th Cir. 1981).  "Ownership" of copyrighted

material in turn, is shown by proof of originality,

5

copyrightability, and compliance with applicable statutory formalities. The Court has found that plaintiffs and Tuff City are valid owners of the copyright and that Jones has no interest in the copyright. *See Johnson*, 2000 WL 1145748 (Aug. 14, 2000). Therefore, Jones may not claim ownership as a viable defense. To determine whether Jones infringed upon the copyright, the Court must determine whether Jones copied the material or infringed upon rights exclusive to the copyright owners in some other way.

Under the Copyright Act, the bundle of rights enjoyed by a copyright owner includes, among other things, the exclusive right to do, or to authorize, any of the following:

> (1) Reproduce the copyrighted work;
> (2) Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and/or
> (3) Display the copyrighted work publicly.

17 U.S.C. § 106. Using, or authorizing the use of, a copyrighted work in any one of these three ways, without permission of the copyright owner, constitutes actionable copyright infringement. *See Sony Corp. of America v. Universal City Studios*, 464 U.S. 417, 432-33, 104 S. Ct. 774, 784 (1984). "An infringer is not one who merely uses a work without authorizations by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner." *See id.* at n.20. In *Sony*, the Supreme Court explained

that Section 106 of the Copyright Act provides:

> Subject to sections 107 through 118, the owner of copyright
> under this title has the exclusive rights to do and to
> authorize any of the following:
>
> > (1) to reproduce the copyrighted work in copies or
> > phonorecords;
> > (2) to prepare derivative works based upon the
> > copyrighted work;
> > (3) to distribute copies or phonorecords of the
> > copyrighted work to the public by sale or other
> > transfer of ownership, or by rental, lease, or lending;
> > (4) in the case of literary, musical, dramatic, and
> > choreographic works, pantomimes, and motion pictures
> > and other audiovisual works, to perform the copyrighted
> > work publicly; and
> > (5) in the case of literary, musical, dramatic, and
> > choreographic works, pantomimes, and pictorial,
> > graphic, or sculptural works, including the individual
> > images of a motion picture or other audiovisual work,
> > to display the copyrighted work publicly.

*Sony*, 464 U.S. at 433, 104 S. Ct. at 784 n.14.  "Anyone who

violates any of the exclusive rights of the copyright owner,"

that is, anyone who trespasses into his exclusive domain by using

or authorizing the use of the copyrighted work in one of the five

ways set forth in the statute, "is an infringer of the

copyright."  *Id.* at 433, 104 S. Ct. 784.  Further, a copyright

owner's exclusive rights include the right to seek royalties from

persons who wish to use the copyrighted work.  *See American*

*Geographical Union v. Texaco, Inc.*, 60 F.3d 913, 929 (2d Cir.

1995); *Ringold v. Black Entertainment Television*, 126 F.3d 70, 73

(2d Cir. 1997).

Jones has claimed ownership of the copyright and the right to royalties.  For example, in March of 1999, he wrote to Rick Joseph, counsel for Priority Records, representing that he owned 50% of the copyright in the song through his company, Melder Publishing Company.  (*See* Tuff City's Mem. Supp. Second Mot. Summ. J. Ex. Q.)   Tuff City has also demonstrated that these claims prevented Tuff City from licensing the song to Priority Records.  (*See id.* Gandel Decl. ¶ 4.)   Tuff City also has presented evidence that Jones' assertions of ownership interfered with Tuff City's ability to license the song to Sony Records and/or Sony Music.  (*See id.* Gandel Decl. ¶ 7-8.)   Further, Tuff City has shown that Jones' ownership claims interfered with Tuff City's collection of performance income from Broadcast Music, Inc. (BMI) and Mechanical-Copyright Protection Society (MCPS), both organizations that collect performance income on songs.  (*See id.* Gandel Decl.¶ 9-13.)   In addition, Tuff City attests that Jones claimed ownership in the song to WWOZ radio station and Jazzfest organizers and that these representations have damaged Tuff City's ability to license the song.  (*See id.* Gandel Decl.¶ 14-16.)   Tuff City also presents evidence that in June of 2000, Soul Jazz Music approached Tuff City to license a variety of New Orleans jazz music and that Soul Jazz Music did not license the song from Tuff City because of Jones' ownership

claims.  (*See id.* Gandel Decl.¶ 17-19.)  Finally, Tuff City
produced sheet music of the song on which Jones claimed to be a
co-owner in the copyright through Melder Publishing Company.
(*See id.* Ex. R.)

In his opposition to summary judgment, Jones only offers the
same 1964 contract and 1992 power of attorney to rebut these
allegations and the supporting evidence.  The Court has
determined that these documents do not establish Jones as an
owner of the copyright.  *See Johnson*, 2000 WL 622612 at *3-*5.[2]
Jones also offered a signature examination dated October 4, 2000,
by Mary Ann Sherry, a handwriting expert.  Sherry's report
concluded that four signatures, including those on the 1992 power
of attorney and the 1964 forged contract, are from the same
writer.  The Court will not consider this report because Jones
submitted the report three months after the deadline for written
reports of experts.  Moreover, the report has little value
considering that Sherry did not have an authentic signature by
Joseph Johnson with which to compare the other signatures.  These
signatures all bear the name Joseph Johnson, plaintiff and co-
owner of the copyright, but nothing in the report proves that the

---

[2] Even if the power of attorney were valid (there is no
sworn testimony that it is and Johnson denies it), it did not
give Jones ownership rights in the copyright or the right to
royalties, both of which he claimed in dealing with third
parties.

signatures are actually Joseph Johnson's signature.

Jones also failed to respond to requests for admission regarding his infringement. The Court will treat these failures to respond to requests to admit as it did in its May 15, 2000 order. In this order, the Court explained that Rule 36(a) gives a party served with requests for admissions thirty days in which to respond. If the party to whom the request is directed does not answer or object to the admissions within that time period, the matter is deemed admitted. *See* FED. R. CIV. P. 36(a). Rule 36(b) adds that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." The conclusive effect of Rule 36(b) "applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." *American Auto. Ass'n v. AAA Legal Clinic of Jefferson*, 930 F.2d 1117, 1120 (5th Cir. 1991) (citations omitted). The Court also explained that it is well established that admissions, including matters deemed admitted as a result of a party's failure to respond to a request for admission, may form the basis for granting summary judgment. *See Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir. 1985); *Simien v. Chemical Waste Mgmt., Inc.*, 30 F. Supp.2d 939, 942 (W.D. La. 1998) (*citing*

10

*United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)).

Tuff City's requests to admit numbers 13-41 deal with Jones' alleged copyright infringement.  These requests include Jones' actions with Priority Records, No Limit Records, Sony Records, BMI, WWOZ radio station, MCPS, and New Orleans Jazz Fest.  Jones had an opportunity to deny these allegations and failed to do so.

Jones claims that Tuff City has never requested discovery from Jones.  (*See* Jones' Mem. Opp. Second Mot. Summ. J. at 3.) When the record indicates that the request for admissions was mailed to the party's last known street address in accordance with Federal Rule of Civil Procedure 5(b), the failure to receive a request will not prevent summary judgment based thereon.  *See In re Mack*, 330 F. Supp. 737, 738 (S.D. Tex. 1970).  The record indicates that Oren Warshavsky, Tuff City's counsel, signed a certificate of service indicating that the requests for admissions were served upon Jones by signed a copy via first class mail on June 9, 2000.  (*See* Tuff City's Mem. Supp. Second Mot. Summ. J. Ex. T.)  The Court finds no reason to disregard Warshavsky's declaration that he sent the request and the exhibit indicating the certificate of service.  Therefore, the Court deems admitted all of the matters raised in Tuff City's requests for admissions dated June 9, 2000.

Even without considering the Rule 36 admissions, the Court

11

finds that summary judgment is appropriate here because Jones has

failed to produce any credible summary judgment evidence to rebut

Tuff City and plaintiffs' evidence that Jones interfered with the

copyright owners' exclusive rights under 17 U.S.C., Section 106,

thereby infringing upon the copyright.

### C.   Damages

The Copyright Act allows a copyright holder to choose

between actual and statutory damages.  *See* 17 U.S.C. § 504(c)(1).

Plaintiffs and Tuff City have elected statutory damages under

section 504(c).  Under this provision, the Court may award any

amount in a sum of "not less that $750 or more that $30,000 as

the court considers just."  17 U.S.C. § 504(c)(1).  Within that

range "the court has virtually unfettered discretion in setting

the damage award."  *See Playboy Enterprises, Inc. v. Webworld,*

*Inc.*, 991 F. Supp. 543, 560 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486

(5th Cir. 1999).  However, when a suit involves willful

infringement, the statute provides that the court has discretion

to increase the damages award to not more than $150,000.  *See* 17

U.S.C. § 504(c)(2).

### D.   Willful Infringement

Plaintiffs and Tuff City claim that Jones' infringement was

willful.  A defendant acts willfully if he knows his actions

constitute an infringement; the actions need not have been

12

malicious. *See Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). The practical significance of the issue of wilfulness is to increase the amount of statutory damages available to a plaintiff up to $150,000. *See* 17 U.S.C. § 504(c)(2).

Jones acted willfully under the meaning of the Act. Jones forged a contract granting rights in the copyright to himself and, knowing that the document was false, he continued to represent that he was an co-owner of the copyright to several parties as discussed above. In addition, Jones has been a party to several copyright infringement cases in federal court, which demonstrates that he understands the consequences of his actions. *See Makedwde Publ. Co. v. Johnson*, 37 F.3d 180 (9th Cir. 1999); *Makedwde, et al. v. Alvin Lee Johnson, Sr., et al.*, (E.D. La. March 23, 1994); *Davis v. Jones*, (E.D. La. Jan. 20, 1994).

In measuring the amount of damages under Section 504(c), courts consider

> what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, ... but with the express qualification that in every case the assessment must be within the prescribed [maximum or minimum]. Within these limitation the court's discretion and sense of justice are controlling....

*F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232, 73 S. Ct. 222, 225 (1952) (*quoting L.A. Westerman Co. v.*

13

*Dispatch Printing Co.*, 249 U.S. 100, 106-07, 39 S. Ct. 194, 195-96 (1919)).  The Supreme Court has held that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement.  *Woolworth Co.*, 344 U.S. at 233, 73 S. Ct. at 225.  Thus, this Court enjoys wide discretion to award any amount within the statutory guidelines.  *See Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

Jones has represented himself as owner of the copyright to several parties.  Ths representation has interfered with Tuff City and plaintiffs' rights to license the song.  Jones has deliberately infringed upon the copyright, failed to answer discovery requests, and submitted a false document to the Court and third parties to assert his ownership.  Jones has asserted ownership many times; however, most courts have found that for a single copyright infringement action, the infringement of a single copyrighted work by more than one infringing act gives rise to only one set of statutory damages.  *See* NIMMER § 14.04[E][2][b].  Although the amount of damages suffered by plaintiffs and Tuff City is difficult to determine, statutory damages serve not only to repair injury but also to discourage wrongful conduct.  *See Woolworth*, 344 U.S. at 233, 73 S. Ct. at

14

225.   The Court believes that deterrence is an important factor
when determining an award.   Given Jones' behavior, the Court
finds that an award of $32,000 is reasonable and just.

### E.   Attorneys' Fees

Plaintiffs and Tuff City further request the court to award
costs and attorneys' fees in this case.   Title 17, United States
Code, Section 505 permits a court to award costs and attorneys'
fees to the party prevailing in a copyright claim.   Thus,
attorneys' fees may be awarded to a prevailing party as a matter
of the court's discretion.   *Fogerty v. Fantasy*, 510 U.S. 517,
533, 114 S. Ct. 1023, 1033 (1994).   However, attorneys' fees are
routinely awarded in copyright infringement actions.   *See
Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985);
*Meadowgreen Music Co. v. Voice in the Wilderness Broadcasting,
Inc.*, 789 F. Supp. 823, 828 (E.D. Tex. 1992).   Considering the
facts surrounding this case, the Court is of the opinion that
reasonable costs and attorneys' fees are justified.   However, the
Court notes that reasonable costs under the Copyright Act is an
amount less than such fee as would be proper between the client
and his attorney.   *See* NIMMER § 14.10[C].   The Court will award
attorneys' fees for plaintiffs and Tuff City's litigation
regarding the Jones claims only.

## III.    Conclusion

The Court grants Tuff City and plaintiffs' motion for summary judgment and awards Tuff City and plaintiffs $32,000. This amount will be split among the parties in accordance with their respective ownership of the copyright.  The Court also finds that plaintiffs and Tuff City are entitled to an award of reasonable attorneys' fees and costs.  Plaintiffs and Tuff City shall submit to the Court within 10 days properly authenticated affidavits establishing the amount of attorney's fees and costs expended in this matter, subject to the exception outlined above. The Court will then determine the proper award using the "lodestar" method.  *See Todd*, 47 F.3d at 1459.

New Orleans, Louisiana, this ____ day of December, 2000.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

16